UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 04-677-C**

**LAWRENCE SCOTT CLARK, ET AL.,**           **PLAINTIFFS,**

**V.**          **<u>MEMORANDUM OPINION & ORDER</u>**

**CITY OF ANCHORAGE, ET AL.,**           **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \* \*

This matter comes before the court on the motion of the plaintiffs for leave to file a second amended complaint (DE 76), on the motion of defendant Commonwealth of Kentucky, Environmental and Public Protection Cabinet (the "Cabinet") to dismiss (DE 63), and on the motion of the United States Department of the Interior ("DOI") to dismiss or, in the alternative, for summary judgment (DE 29, 61)[1]. The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiffs' motion for leave to file a Second Amended Complaint, will grant the Cabinet's motion to dismiss in part and deny it in part, and will grant the DOI's motion to dismiss in part and deny it in part.

**Factual and Procedural Background**

In 1919, D.C. and Carrie Clarke became owners of property in Jefferson County, Kentucky. The Clarkes then subdivided the property into what would eventually be

---

[1] Neither the plaintiffs' First nor Second Amended Complaint raises any new claims against the Department. Therefore, the court relies on the record developed during the Department's initial Motion to Dismiss (DE 29).

known as Bellevue Park and Lake.[2] The subdivision consisted of 58 lots with a small lake and park at the center; the park and lake were dedicated for public use. At some time in the 1960s, the City of Anchorage ("Anchorage") began to use the property in a manner inconsistent with the original dedication, draining and filling the lake and using the area as a municipal waste dump.

In 1980, the City of Anchorage sought and received funds under the federal Land and Water Conservation Fund Act ("LWCFA") to construct a park at Bellevue Park and Lake. Incident to the construction of the park, a "Declaration of Restrictions for Shallcross Park" was filed in 1982, which recites the Secretary of the Interior's authority over the property. The Cabinet approved the construction of the park on the condition that all solid waste generated during the construction be disposed of in a facility approved by the Division of Hazardous Material and Waste Management. Despite this admonition the plaintiffs allege that there is still solid waste at the site and that the City of Anchorage continues to illegally dump solid waste at the site. In September 1984, a representative from the Department of the Interior inspected the site and found that Anchorage had not complied with the requirements of the grant. Anchorage was subsequently required to return the funds it received under the LWCFA. However, the Declaration of Restrictions remains of record.

The plaintiffs' First Amended Complaint alleges that the Cabinet violated 42 U.S.C. § 1983 by taking their property in violation of the Fifth Amendment. It also alleges that the Cabinet failed to enforce the Resource Conservation and Recovery Act,

---

[2] This property has also been known as Argonne Park and Shallcross Park.

42 U.S.C. §§ 6924, 6925 ("RCRA"). In its motion to dismiss, the Cabinet argues that these actions are barred by the Eleventh Amendment's grant of immunity to state agencies from suits in federal court. In response, the plaintiffs filed a motion for leave to amend their complaint to bring these claims against LaJuana Wilcher in her official capacity as Director of the Cabinet.

As against the Department of the Interior, the plaintiffs bring two claims. First, the plaintiffs claim that the Department violated 42 U.S.C. § 1983 by taking their property in violation of the Fifth Amendment to the United States Constitution. Second, the plaintiffs seek a declaratory judgment as to the ownership of, and boundaries to, the Park.

I.  **Leave to File an Amended Complaint, and the Cabinet's Motion**.

Leave to file an amended complaint is freely given when justice so requires. Fed R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. However, leave may be denied if the amendment would result in undue delay or prejudice to the nonmoving party, or would be futile. *Id.*; *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). The Cabinet objects to the plaintiff's Second Amended Complaint because it was filed after the agreed deadline for joining other parties, and because the complaint would be dismissed in any case.

*The agreed deadline*

In March 2005, it was agreed that all parties shall be joined by June 1, 2005 (DE

3

24). The plaintiffs' motion for leave to file a second amended complaint was not filed until July 14, 2005. Although the plaintiffs' delay in filing their motion violates the June deadline, there is no prejudice; the amendment merely seeks to join the Director of the Cabinet in her official capacity and does not amend any of the substantive claims. Similarly, as Ms. Wilcher is the Director of the Cabinet, the court presumes that she is abreast of the developments in this case. Because it is a goal of our judicial system to allow plaintiffs to test their claims on the merits, the court will not deny the plaintiffs' motion for leave to file an amended complaint without a showing of some prejudice.

*42 U.S.C. § 1983*

Section 1983 provides a remedy to a party that has been deprived of a right guaranteed by the Constitution or federal law by a person who acts under color of state law. 42 U.S.C. § 1983; *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). For the purposes of § 1983, a suit against a state official in her official capacity "is not a suit against the official but against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988). Therefore, state officials acting in their official capacities are not "persons" within the meaning of that statute. *Id.* This definition also excludes from the definition of "person" an official of a state agency acting in her official capacity. *See id.*

In this case, the plaintiffs have sued the Director of the Cabinet in her official capacity. However, under § 1983, the Director is not a "person." Therefore, this claim cannot survive the Cabinet's motion to dismiss because the plaintiffs cannot meet an essential requirement of a § 1983 suit. Notwithstanding *Will*, the plaintiffs argue that

*Arnett v. Myers*, 281 F.2d 552 (6th Cir. 2002), permits a plaintiff to bring a claim against state officials in their official capacity under 42 U.S.C. § 1983. *Arnett* considered whether the Eleventh Amendment bars suits against state officials acting in their official capacity. 281 F.2d at 567. It did not consider whether these officials were "persons" within the meaning of 42 U.S.C. § 1983. Therefore, *Arnett* is not applicable to this case.

*The RCRA claim*

The Eleventh Amendment prohibits a plaintiff from suing a state in federal court absent the state's consent. *Rolands v. Pointe Mouillee Shooting Club*, 959 F. Supp. 422, 425 (E.D. Mich 1997) *aff'd* 182 F.3d 918 (6th Cir. 1999). This protection also extends to state agencies, which are arms of the state. *Id.* There are several exceptions to Eleventh Amendments sovereign immunity. One of these exceptions, articulated in *Ex Parte Young*, 209 U.S. 123 (1908), allows suit against state officials in their official capacity for violations of the United States Constitution or federal law. *See also Arnett*, 281 F.3d at 567-68. In this case, the plaintiffs allege violations of the RCRA and name the Director of the Cabinet as a defendant. Therefore, the Eleventh Amendment does not bar this cause of action. *See id.*

The Cabinet also contends that the plaintiffs have failed to exhaust their administrative remedies and, therefore, the plaintiffs' claims are not ripe. None of the authority cited by the Cabinet supports the proposition that plaintiffs were required to engage an administrative process before bringing a claim under the RCRA. Nor does the Cabinet point to any section of the RCRA mandating an exhaustion of administrative remedies. Therefore, the plaintiffs' claim under the RCRA is not

precluded based on their alleged failure to exhaust administrative remedies.

## II.     The Department's Motion.

*42 U.S.C. § 1983*

Under certain circumstances, a federal official or agent may be subject to liability under § 1983 for violating federal or constitutional law while acting under color of state law. *Strickland v. Shalala*, 123 F.3d 863, 866-67. "[C]ourts finding that a federal official has acted under color of state law have done so only when there is evidence that federal and state officials engaged in a conspiracy or symbiotic venture to violate a person's rights under the Constitution or federal law." *Id.* However, a federal agency is not a "person" under § 1983, and therefore may not be sued under this act. *Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998). In this case, the plaintiffs have sued the Department of the Interior, not any of the individual officers, agents, or employees of the Department of the Interior. Nor have the plaintiffs alleged a conspiracy or symbiotic venture between federal and state employees to violate their rights. Therefore, the plaintiffs have not pled a claim under 42 U.S.C. § 1983, and this cause of action must be dismissed.

*The Declaratory Action*

The Quiet Title Act, 28 U.S.C. § 2409a, is the exclusive means by which the plaintiffs can challenge the United States' interest in real property. *Block v. North Dakota*, 461 U.S. 273, 286 (1983). To sustain a cause of action under the Quiet Title Act, the United States must claim an interest in real property and title to the property

must be in dispute. 28 U.S.C. § 2409a(e); *Leisnol, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). The Department of the Interior contends that it does not now have, nor has it ever had, an interest in Belleview Park and Lake. Indeed, the Department of the Interior argues that it was forbidden from acquiring an interest by long-standing policies codified in the Code of Federal Regulations, 43 C.F.R. § 12.71; the National Park Service LWCF Grants Manual, § 675.2.9; the Bureau of Outdoor Recreation Manual, § 675.2.8; and the Heritage Conservation and Recreation Services Manual, § 675.1.9.

  The LWCFA authorizes the Secretary of the Interior to provide grants of money to the states for projects consistent with the goals of the act. 16 U.S.C. § 460l-8. According to the Code of Federal Regulations, 43 C.F.R. § 12.71, title to real property acquired under a grant from the DOI remains with the grantee. Similar provisions vesting title in the grantee are found in the manuals cited by the Department. The Quiet Title Act, however, covers disputes under which the United States claims an interest. Whether the interest amounts to legal title is irrelevant so long as the interest clouds title. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Mafrige v. United States*, 893 F. Supp. 691, 698 (S.D. Tex. 1995) *aff'd* 189 F.3d 466 (5th Cir. 1999). In this case, although the DOI may not have legal title to the Park, they are alleged to have an interest in it: the Declaration of Restrictions appears to cloud title because the Secretary of the Interior must approve any conversion of the property. Therefore, it is inappropriate to dismiss this action as one that does not satisfy the requirements of the Quiet Title Act.

The DOI also argues that it has disclaimed all interest in the Park and that, because of the disclaimer, the court does not have jurisdiction to hear this case. Under the Quiet Title Act, the United States may disclaim an interest in real property. 28 U.S.C. § 2409a(e). When the court accepts this disclaimer, the court must dismiss the cause of action. *Id.; Bily v. Illinois Cent. Gulf R.R. Co.,* 637 F. Supp. 127, 131 (N.D. Ill. 1986). The DOI argues that since it has disclaimed its interest, the court should accept this disclaimer and dismiss the action.[3] The court notes that, other than its motion to dismiss, the DOI has filed nothing proving that, as a matter of law, it has disclaimed its interest in the Park. Viewing the question of whether the DOI has effectively disclaimed in a light most favorable to the plaintiffs, it is inappropriate to grant the DOI's motion to dismiss this cause of action. Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for leave to file a Second Amended Complaint (DE 76) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to the plaintiffs' claim under 42 U.S.C. § 1983 and this claim is **DISMISSED WITH PREJUDICE**. The motion is denied with respect to the plaintiffs' claim under the RCRA.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss (DE 29, 61)

---

[3] There is a dearth of authority as to what constitutes an effective disclaimer under the Quiet Title Act as a matter of law. The DOI cites three cases where the court has approved a disclaimer under the Quiet Title Act: *Bily,* 637 F. Supp. at 131; *Lee v. United States*, 629 F. Supp. 721, 726 (D. Alaska 1985); *W.H. Pugh Coal Co. v. United States*, 418 F. Supp. 538, 539 (E.D. Wis. 1976). However, these cases are distinguishable from this case. In *Bily*, no party objected to the United States's disclaimer. In *Lee,* the United States "formally disclaimed," suggesting an appropriate filing with the court. In *W.H. Pugh Coal*, the United States filed a quit claim deed.

is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to the plaintiffs' claim for relief under 42 U.S.C. § 1983, and this claim is **DISMISSED WITH PREJUDICE**. The motion is denied with respect to the plaintiffs' claim for declaratory relief.

    **IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (DE 29, 61) is **DENIED** without prejudice.

Signed on  January 17, 2006

                                                           **Jennifer B. Coffman, Judge**
                                                           **United States District Court**